IN THE MATTER OF THE APPLICATION OF THE NEW YORK BAY RAILROAD COMPANY FOR A SUMMARY DETERMINATION AS TO CERTAIN LANDS IN JERSEY CITY, WHICH HAVE BEEN ASSESSED BY THE LOCAL AUTHORITIES OF JERSEY CITY, AND ALSO ASSESSED BY THE STATE BOARD OF ASSESSORS, AS PROPERTY USED FOR RAILROAD OR CANAL PURPOSES.

Argued February 19, 1907—Decided August 6, 1907.

In a proceeding to determine the character of certain lands of a railroad company for the purposes of taxation pursuant to section 28 of the revised act for the taxation of railroad and canal property (*Pamph. L.* 1888, *p.* 269; *Gen. Stat., p.* 3324), the same having been doubly assessed, it appearing that the lands were parts of the terminal of the company's railroad, which was a branch road designed to carry the freight and freight cars of a large railroad system to the terminal located at tidewater, to be thence carried by boats to their various points of destination, and that the terminal was being constructed upon land under water which was being gradually filled in and reclaimed for the purpose, and which was not yet completed, and that said lands had been assessed by the local authorities of the city in which they were located, and also by the state board of assessors, as lands used for railroad purposes—*Held*—

(1) That plots Nos. 2a and 2b, as designated upon the city assessment map, located between the shore line and the exterior line for solid filling, and adjoining the main stem already assessed by the state board, were lands either in actual use by the company for railroad purposes, or held for such fairly anticipated use (following the decision of this court in *New Jersey Junction Railroad Co. v. Jersey City*, 34 *Vroom* 120), and were properly assessed by the state board of assessors.

(2) That a like result must be reached as to plot No. 2 (one hundred and twenty-five acres), fronting the above in a seaward direction, lying between the exterior line for solid filling and the exterior line for piers.

(3) That plot No. 2, being chiefly land under water, estimated to contain about one hundred and eighteen acres, lying west of the exterior line for solid filling and north of the lands above described, was properly taxed by the local authorities, the proof failing to show, with sufficient certainty, that it was devoted to present or fairly anticipated use for railroad purposes, following *In re Central Railroad Company of New Jersey*, 43 *Vroom.* 86.

(4) That as to plots Nos. 2*a*, 2*b* and 2 (one hundred and twenty-five acres), the city's assessment must be reduced so as to leave them untaxed by local authority, and that as to plot No. 2 (one hundred and eighteen acres), the city's assessment must stand and the state board's assessment reduced accordingly.

On rule to show cause.

Before Justices FORT, HENDRICKSON and PITNEY.

For the New York Bay Railroad Company, *James B. Vredenburgh.*

For the mayor and aldermen of Jersey City, *Robert Carey* and *George L. Record.*

For the state, *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

HENDRICKSON, J.    This is an application by the New York Bay Railroad Company for a summary determination of the character of certain lands of the applicant within the city of Jersey City for the purposes of taxation, pursuant to the authority of section 28 of the revised act for the taxation of railroad and canal property. *Pamph. L.* 1888, *p.* 269; *Gen. Stat., p.* 3324. The assessments in question were levied in the year 1905. The plots of land so assessed are grouped together, forming block 1507, as designated upon the tax assessment map of Jersey City. They are portions of the terminal of the petitioner, the New York Bay Railroad Com-

pany, located at tidewater on New York bay, in that part of Jersey City known as Greenville. The road was organized in 1890, and runs from a point in the Pennsylvania railroad at or near Waverly to the terminal named. The construction of the road and terminal was begun in 1889, but the road was not completed so as to permit its operation until October, 1904, and the terminal is not yet completed. The proof shows that the land upon which it is being constructed was mostly land under water, which is being gradually reclaimed by filling in, and upon which is being constructed a large terminal freight yard for the Pennsylvania railroad system. The road is now being operated by the latter company as a freight road, and is designed, in connection with the terminal, for the carriage of its freight and freight cars to and from points in New York harbor and on Long Island sound. These lands were assessed by the city authorities on May 20th, 1905, and were also assessed during the same year by the state board of assessors, as property used for railroad purposes, and the question before us is, Were the lands so assessed, at the date of the assessments, lands used for railroad purposes within the meaning of the act named? If they were, then the state assessment must stand and the city's assessment must be set aside, and if not, then the result must be *vice versa.* We have already determined a similar application of the same company at this term, as to lands within the right of way of the petitioner. The opinion may be found *ante p.* 111. The plots now under consideration are designated upon the map *Exhibit P* 4, offered on behalf of the petitioner, as Nos. 2*a*, 2*b* and 2 and 2 (one hundred and twenty-five acres), as they also appear upon the city assessment map.

As to plots Nos. 2*a* and 2*b,* which lie between the shore line and the exterior line for solid filling, the former on the south side and the latter on the north side of a strip of the same terminal marked on *Exhibit P* 4 as main stem and sixty-eight acres, we think it is satisfactorily shown that at the date named they were lands either in actual use for railroad purposes or held for fairly anticipated railroad purposes, and were therefore under the decision of this court in *New Jersey*

*Junction Railroad Co.* v. *Jersey City,* 34 *Vroom* 120, taxable only by the state board of assessors as railroad property. This case was followed in *Central Railroad Company* v. *Bayonne,* 42 *Id.* 476.

Plot No. 2*b* is shown to have been filled in and graded, with tracks constructed thereon, as shown in red on *Exhibit P* 4, and freight cars have been running thereon since October, 1904, and while plot No. 2*a* was not entirely filled in at that time, the filling in was completed in 1906, and while the engineer could not testify positively as to the use that would be made of plot No. 2*a* by the company, he did testify that the tracks shown in blue on the plan exhibit the layout of the property in question, and that the whole work was being done according to the plan, of which *Exhibit P* 4 was a copy, as placed in his hands as a guide to the construction in 1902, and since upon this plan we note that the tracks already laid and those projected show a connected system of tracks forming a yard covering, to a greater or less extent, both of the plots Nos. 2*b* and 2*a*, as well as the main stem, we think this fact, taken in connection with the other evidence, is sufficient to justify the conclusion we have reached as to plots Nos. 2*a* and 2*b*, as already stated.

As to plot No. 2, which lies west of the exterior line for solid filling and on the northerly side of the main stem, the larger part of which is still under water, containing about one hundred and eighteen acres, we think the evidence fails to show that this plot is subject to taxation by the state board under the rule just cited, and that as to it the assessment by the local authorities must stand. It is urged for the company that at least twenty-five acres of this plot is devoted, as alleged, to a channel dredged out in the same, and to some tracks laid out upon the filled in part, but the engineer frankly stated that he never saw any plan for the improvement of this plot, and we think, under the ruling of this court, as expressed by Mr. Justice Dixon in *In re Central Railroad of New Jersey,* 43 *Vroom* 86, 91, with regard to items 43 and 45 in that case, that the evidence adduced does not establish with sufficient certainty the use contended for.

As to plot No. 2 (one hundred and twenty-five acres), as marked upon the map, consisting of land under water between the exterior line for solid filling and the exterior line for piers, having upon it, already constructed, a lighterage pier, transfer bridges with tracks laid thereon to receive freight cars for transportation, with a system of buoys, breakwaters and lights for the protection of navigation into and out of the same, we think this plot comes within the rule laid down in *New Jersey Junction Railroad Co.* v. *Jersey City, supra,* and was properly assessed by the state board of assessors. It is conceded by the city that a strip enclosing the lighterage pier from east to west, containing about thirty acres, might properly be so assessed, but the evidence shows that this plot has been dredged by the company, at great expense, creating channels therein of sufficient depth for the navigation of vessels to and from the deep water of the bay, and further, that the traffic in freight at this terminal since October, 1904, has been very large, involving the handling at times of about one thousand cars a day, so that we think the whole of this plot is reasonably necessary as an appendage of the terminal, and that it was properly included in the assessment by the state board.

The city's assessment not having been separately made, as we understand, against the plots named, but against all of them together in the block named, we are unable to order a cancellation of the assessment, but it should be reduced so as to leave plots Nos. 2a and 2b and 2 (one hundred and twenty-five acres) untaxed by local authority. *In re Assessment Central Railroad Company of New Jersey, supra.*

The state assessment for that year must be reduced by excluding from its valuation plot No. 2, estimated as above to contain about one hundred and eighteen acres, and the excess of tax paid to the state by the company over the amount due under such corrected assessment must be returned to the company. The judgment will be entered without costs.